U.S. COURTS

JUN 02 2014

Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

JAMES STORM SHIRLEY
1215 N. 25th Avenue
Apt. 103
Bozeman, MT 59718
Telephone: (503) 351-2580
E-mail: bigskystorm@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES STORM SHIRLEY, | CASE NO. 3:14-CV-215-REB |
| Plaintiff, | COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | |
| THE UNIVERSITY OF IDAHO, COLLEGE OF LAW at the UNIVERSITY OF IDAHO, & IDAHO STATE BOARD OF EDUCATION, | |
| Defendants. | |

COMES NOW the Plaintiff James Storm Shirley, for a cause of action against The University of Idaho, The College of Law at the University of Idaho, & The Board of Regents aka. Idaho State Board of Education, and states and alleges as follows:

### NATURE OF THE ACTION

1. This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief and damages on the following bases:

    a. Americans with Disabilities Act, Subchapter II-Public Services, 42 U.S.C. §12131 et seq. (hereinafter "ADA"), and in particular:

i. Discrimination against disabled persons, whereby, "No qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

ii. Public Entity, The term public entity means: (A) any State of Local government; (B) *any department, agency, special purpose district, or other instrumentality of a Sate or States or local government.* 42 U.S.C. §12131(1)(B).

iii. Refusal and delay in making reasonable accommodations to "Qualified individual with a disability" in rules, policies, practices, or the provision of auxiliary aids and services, when such accommodations are requested by an otherwise eligible and qualified individual to receive such services and participate in programs or activities provided by a public entity. 42 U.S.C. §12131(2);

iv. Retaliation. "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. §12203(a);

v. Interference, coercion, or intimidation. "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. §12203(b)

v. Rehabilitation Act of 1973, 29 U.S.C. §701 et seq. (hereinafter "Rehabilitation Act") and its implementing regulations.

  b. Negligence.

## JURISDICTION AND VENUE

  2. This Court has jurisdiction over this action pursuant to 42 U.S.C. §12131-34, §12203, 29 U.S.C. §794 (§504) and 45 C.F.R. §84.44(c) (2011). The amount in controversy exceeds $75,000 exclusive of interests and costs. Venue is proper in this District in that the claims alleged herein arose in the City of Moscow, County of Latah, State of Idaho. However, as such location may present an inability to obtain an impartial jury, the Plaintiff is formally requesting that Coeur D'Alene serve as the court to facilitate an impartial forum to hear claims.

## PARTIES

  3. The Plaintiff James Storm Shirley (hereinafter "the Plaintiff") is a private individual which it is claimed has been aggrieved in this complaint and his principal place of residence at the time of filing this complaint is 1215 N. 25th Avenue #103, Bozeman, Montana 59718. The Plaintiff was a student at the University of Idaho from August 2010 until August 2013, enrolled in the joint degree (Ph.D./J.D.) graduate programs in the College of Law and the College of Graduate Studies (Waters of the West-Science & Management emphasis) during this time.

  4. The Defendant The University of Idaho (hereafter, "Defendant U of I") is a public entity offering educational opportunities in the State of Idaho and is funded by Local, State and Federal funding. Defendant U of I is an undergraduate/graduate educational institution of approximately 15,000 students and is located in the Administration Building, Room 105, Moscow, Idaho 83844. The Defendant U of I is a covered "Public entity" subject to the requirements of the ADA, as provided by 42 U.S.C. §12131(1).

  5. The Defendant The College of Law at the University of Idaho (hereafter "Defendant College of Law") operates as a "quasi" independent College under the University of Idaho

3

banner but subject to its own "honor code" and set of governing regulations. The Defendant College of Law is a public entity offering educational opportunities in the State of Idaho and is funded by Local, State and Federal funding. Defendant College of Law is a graduate and professional school of approximately 350 students that trains individuals for a career in Law and successful graduates are awarded the Doctor of Jurisprudence (J.D.) degree which permits them to apply for and sit for the bar exam in the state of desired practice. The Defendant College of Law, is located at 875 Perimeter Drive MS 2321, Moscow, Idaho 83844 and is also a covered "Public entity" subject to the requirements of the ADA, as provided by 42 U.S.C. §12131(1).

6. The Defendant The Idaho State Board of Education (hereafter, "Defendant ISBOE") is the administrative/governing entity of all public schools within the State of Idaho. The Defendant ISBOE, in its "governing" role over Defendant's U of I and College of Law has jurisdictional oversight over these "public entities." In addition, Defendant ISBOE's is required to exercise appropriate oversight of Defendant's 5 & 6, making its inclusion as a party imperative. Defendant ISBOE's address of record is 650 West State Street, 3rd Floor, PO Box 83720, Boise, ID 83720-0037. Defendant ISBOE in exercising its role of governance of Defendant's U of I and College of Law in conjunction with its denial to hear previous administrative appeals offered by the Plaintiff subject to its inclusion in all proceedings related to these two entities. Thereby, the Defendant ISBOE is also a covered "Public entity" subject to the requirements of the ADA, as provided by 42 U.S.C. §12131(1).

## GENERAL ALLEGATIONS

7. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-6 above.

8. Plaintiff, James Storm Shirley (hereafter, "J.S.S.") is a former graduate student at the University of Idaho. J.S.S. was accepted to the Ph.D. program in the Waters of the West Program in the College of Graduate Studies at the University in January of 2010, and subsequently the College of Law in July of this same year.

9. In 1993, while attending Purdue University prior to matriculating into the University of Idaho/College of Law to begin work on his degrees, J.S.S. was found to have the disability "cognitive disorder not otherwise specified" as a result of testing and imaging that took place at both his University and Home Hospital in Lafayette, IN. J.S.S. nevertheless completed his B.A. degree in December of 1995, but was informed that such condition was permanent and most likely progressive in nature. This disability was determined to have originated from three serious concussions, producing both unconsciousness and memory lapses that occurred while engaging in HS baseball and football from the years 1979-1981. J.S.S. ceased such activities permanently after the occurrence of the third injury.

10. J.S.S. was permitted reasonable accommodations subsequently by Purdue University, Portland State University, and the University of Montana. J.S.S. did not seek out or require accommodations while attending Montana State University; however, the nature of J.S.S. disability did not seem to affect his ability with mathematical or quantitative reasoning and as such, it is only under certain circumstances, mainly comprehension of abstract and complex reading passages, that J.S.S. requires his ADA accommodations that are his right under the ACT.

11. J.S.S. entered U of I/College of Law in the fall semester of 2010 completely naïve of such a very defined limitation in his reading/comprehension skills. As such, he did not immediately notify or seek out reasonable accommodations under the ACT. J.S.S. believed himself to be capable of operating on a level of academic prowess equal to his classmates and it

was only upon sitting through his first (and only) mock mid-term exam that he discovered his limitation. At this time, October of 2010, J.S.S. contacted his associate Dean, Helen Albertson about his concerns. J.S.S. had also only recently discovered his mother had been diagnosed with breast cancer and the meeting with his Dean explored this revelation along with his discovery that his accommodations would be required in the College of Law. Dean Albertson urged J.S.S. to get in contact with Disability and services at the University of Idaho at this time, which was late October/early November of 2010, his first semester at the College of Law.

12. J.S.S. contacted Disability Support Services (hereafter "DSS") and was referred directly to the Counseling and Testing Center (hereafter "CTC") at the University as DSS claimed that such testing at Purdue was "too old to be of any relevance" but was informed that CTC might be able to "pull some strings" and update testing accordingly under the circumstances. Dr. Steve Saladin was immediately contacted at CTC and J.S.S. related his concerns as to his need for immediate accommodations. J.S.S. was screened and placed upon a "lengthy waiting list" accordingly, but was encouraged to directly contact the College of Law and seek/request accommodations in the interim.

13. J.S.S. sought out such accommodations by means of Dean Albertson and later the academic services director. As finals approached, J.S.S. had still not received intake or any sort of testing via CTC despite being under the impression his "testing was to be expedited."

14. J.S.S. was never contacted or tested prior to finals that fall which forced him into the untenable situation sitting for his exams without the accommodations to which he was entitled.

15. At the beginning of spring semester 2011, J.S.S. poor performance on his exams due to his lack of accommodations became obvious, as exhibited by his 1.58 GPA, which resulted in his immediate placement on probation in the College of Law. J.S.S. began to "turn up the heat"

on getting his ADA accommodations and believed that such testing would occur. However, such testing and at minimum, interim accommodations while such process took place were never to occur and J.S.S. was forced to take his spring exams under the identical circumstances as he had the previous fall term, producing an similar 1.52 GPA for a 1.54 cumulative that subjected him to immediate removal from the college of Law as his GPA was below the 2.0 minimal standard.

16. As a result of this failure to accommodate, J.S.S. was informed to drop his current summer classes at the University of Montana College of Law; however, J.S.S. instead appealed this disqualification and sought out the help of the University of Montana's Disability Services office and Bernadine Gantert in July of 2011. Ms. Gantert reviewed J.S.S. disability documents and history, the SAME documents as provided to the University of Idaho, and determined an emergency situation that warranted immediate accommodations did in fact exist.

17. Ms. Gantert summarily granted J.S.S. immediate accommodations at the University of Montana and agreed to contact her counterpart at the University of Idaho, Gloria Jensen, to discuss their failure to reasonably accommodate J.S.S. during his first year at the College of Law, which she did and resulted in immediate interim accommodations being provided for J.S.S. at the University of Idaho in July 2011, despite there being no new/updated testing taking place since their denial of accommodations in November of 2010. Ms. Gantert also reiterated to U of I DSS/CTC that such testing occur immediately to accommodate J.S.S. under the ADA and that she believed the University of Idaho to be in violation of J.S.S. civil rights under the act. Further, the inclusion of his University of Montana grades during this summer semester, during which time he was accommodated, would have improved his GPS to well above 2.0 and removed him from probation from this point forward. However, such grades were not even permitted to attach to his University of Idaho transcript as it was claimed by the College of Law that such grades

7

occurred while "on probation" and were therefore "not applicable for transfer" and making J.S.S. climb off probationary status all the more difficult.

18. Simultaneously with Gloria Jensen's granting of "interim accommodations" for the academic year 2011-2012, J.S.S. was required to appeal his disqualification with the College of Law, to which he was *partially* successful. Despite the fact that he has sought reasonable accommodations since October/November of 2010, his first semester in Law school, the faculty in the Law school chose to only provide "credit" for those courses taken in the spring semester as they believed that some ambiguity as to when precisely they had been informed of J.S.S. disability and request of accommodations took place. Despite J.S.S. concerns of being saddled with what was now a 1.52 GPA remaining from his fall term (coupled with a disputed grade in Legal research and writing), J.S.S. was determined to move forward and climb off probation as his GPA was still well below the required 2.0.

19. Moving forward to the end of fall 2011, J.S.S. was able to increase his cumulative GPA to 1.88 on the strength of his 2.33 of the fall semester following being granted his entitled accommodations. Further, during fall 2011, J.S.S. was *finally* tested by CTC and it *was confirmed by the University of Idaho's own Counseling and Testing Center director Steve Saladin that J.S.S. did indeed have the disability which he claimed to have and was entitled to accommodations under the ADA.*

20. J.S.S. received a modest 2.09 for his spring semester grades and contested and was later retaliated against as a result of his concerns expressed as to his grade in a Native Law course (his primary emphasis area), which resulted in his GPA falling just 2.31 grade points shy of the 2.0 required GPA. Despite J.S.S.'s rise from a 1.52 less than a year before, he was once again disqualified by the College of Law for only having a 1.95 GPA. J.S.S.'s efforts to appeal

8

such disqualification and secure reinstatement to complete his final 17-20 credits of legal education failed despite the University of Idaho's own director of Counseling and Testing, Dr. Steve Saladin, accepting responsibility for J.S.S. delay in testing and his letter to the College of Law faculty supporting J.S.S. reinstatement under the circumstances as he described in his letter dated August 8th, 2012. Despite Dr. Saladin's own admission of fault in failing to timely test for and approve interim accommodations which such testing took place, the College of Law ignored Dr. Saladin's recommendation and chose to uphold J.S.S.'s disqualification.

21. During fall of 2012, As J.S.S. was still seeking reinstatement and enrolled ONLY in his graduate (Ph.D.) program at the University of Idaho, he was informed that an "honor code violation" in the College of Law had been lodged by his professor in the disputed Indian Law course. Interestingly, such an honor code complaint was initiated long after J.S.S. had already been disqualified from his Law program. Nevertheless, J.S.S. sought to dispute the claim and upon doing so, was at least partially successful, whereby, the restoration of such partial credit on the exam question of contention should have been enough to improve J.S.S. cumulative GPA above the 2.0 threshold and securing reinstatement. During this contentious process, the University displayed tactics of intimidation by bringing in security for the hearing. Such actions were without precedent and unquestionably signified the beginning campaign of retaliatory campaign of coercion and intimidation to come. Despite J.S.S. defense of such allegations in this honor code violation coming some four months after his disqualification and in spite of his partially successful verdict, the College of Law seemed to be attempting to tarnish J.S.S.'s reputation in an effort to offset the impending legal action that they were well aware was imminent as soon as administrative remedies were exhausted.

22. During this time J.S.S. had been pursing an appeal to the Provost, Doug Baker to overturn the College of Law's decision; Provost Baker also chose to ignore the obvious admission of fault by Steve Saladin in handling my testing and requests by J.S.S. to meet face to face with the Provost on this matter were denied, forcing a second appeal to the President of the University of Idaho, Duane Nellis, who also denied J.S.S. appeal after drawing out a decision for nearly three months which were little more that "stall tactics" to attempt to cause a six month statute of limitations deadline to be missed. However, to prevent such expiration, an administrative complaint was filed with the Civil Rights Division, U.S. Department of Justice, on December 19th, 2012. Immediately after such complaint was filed, President Nellis upheld Provost Baker's and the College of Law's decision, also ignoring Dr. Saladin's documentation of mismanagement of J.S.S. testing and granting of accommodations.

23. During this time period as J.S.S. was diligently attempting to complete his Ph.D., a simple mis-understanding of a an assignment's directions in his undergraduate Limnology, FISH 415 class was turned into a coercive effort to drive J.S.S. from the University of Idaho once and for all; by turning such mis-understanding into a reason to seek expulsion from the University. According to the ASUI attorney, he'd never seen such a blatant disregard to justice and overt attempt to disregard rules of evidence and good taste administrative procedure.

24. These proceedings built extensively upon the disputed and inappropriate honor code violation in the College of Law (and coincidently almost immediately after its resolution), J.S.S. was expelled from the University. As before, J.S.S. proceeded through the administrative appeal available at the University of Idaho and continued his graduate work, securing across the board "A's" in all but two classes, the aforementioned FISH 415, in which he was failed and in incomplete in a summer GIS course caused by the University's blocking his completing this

course after the State of Idaho Board of Education refused to hear J.S.S. appeal in August of 2013. By this time the University of attorney, Kent Nelson had assumed an active and aggressive role in these proceedings that to my understanding is absolutely unprecedented. Such legal actions by the University, including Mr. Nelson's blockade of J.S.S. request that interim President Burnett review his University appeal when it became obvious that outgoing President Nellis never read this appeal, all serve to definitively support J.S.S. claims of retaliation and coercion and worthy of remedy under 29 U.S.C. §794.

25. As the result of the Defendants' discriminatory and negligent conduct, the Plaintiff has diverted resources, been forced to move, lost substantial economic opportunity, and the completion of his two degrees, Ph.D. and J.D. has been blocked. Such actions have resulted in an unconscionable loss of potential employment revenue and the accumulation of enormous debt to which he has little or no ability to repay.

26. Due to the protracted and drawn out nature of the Defendants' conduct, said conduct constitutes an egregious violation of J.S.S. civil rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

COUNT ONE—DISCRIMINATION ON THE BASIS OF "DISABILITY" IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND IMPLEMENTING REGULATIONS

27. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-26 above.

28. The Defendants have discriminated against the Plaintiff in multiple ways. First, according to the Code of Federal Regulations: Federal regulations that apply to a University *requires* it to "make modifications to it academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of

handicap, against a qualified handicapped applicant or student." 45 C.F.R. §84.44(a)(2011). Said regulations *specifically require* a University to modify the methods by which it administers course examinations. 45 C.F.R. §84.44(c)(2011).

29. The Defendants have discriminated against the Plaintiff despite there being clarification and guidance in the University of Idaho's Faculty/Student Handbook (hereafter "FSH") which provides that "it is the policy of the regents (aka. Defendant ISBOE) that equal opportunity be afforded in education and employment to qualified persons regardless of.... disability...." FSH §6010. The University's FSH further requires that "the University shall operate its programs and activities in the most integrated setting appropriate... [presumably] in compliance with the ADA and Section 504 and is intended and shall be construed to afford the protections and rights provided by those laws." FSH §6400.

30. Despite such detailed provisions in the FSH, the Defendant U of I's "overloaded system" (as described by Dr. Steve Saladin) for psychological testing was incapable of performing in the manner to which by law it is supposed to perform. Dr. Saladin state's that "even had he turned in his materials on the first day of class, it is quite probable tat he would not have been assessed in time for the fall exam period." Such a revelation as offered by the U of I's own director of Counseling and Testing is a clear violation of the ADA, §504 of the Rehabilitation Act, and the University's very own Faculty Student Handbook.

31. The Plaintiff contends that he should have been offered and interim modification pursuant to §6400(B-8) of the FSH; however, no such modification was offered or made, and the Plaintiff sought such modification directly through the College of Law due to this violation of the ADA, he was expressly denied the accommodation to which he was entitled.

32. Additionally, the University's FSH expressly requires it to "make reasonable modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate, or have the effect of discriminating, on the basis of disability, against a qualified student with a disability." FSH §6400(B-1)(a). Significantly, the University's very own FSH provides that "the University will make a reasonable effort to provide interim modifications to academic requirements and/or interim auxiliary aides while a person's application for aids or services is being reviewed." FSH §6400(B-8).

33. Despite there being ample guidance within the University of Idaho's carefully crafted Faculty/Student Handbook to address just such a situation as the Plaintiff presents, the Defendants refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were found to be necessitated by the Plaintiff's circumstances. Such blatant disregard of these guidance principles offered in the FSH has resulted in a violation of the Plaintiff's civil rights under the ADA and precipitated this action.

34. Such conduct is believed to have been willful and intentional, and exhibits reckless or callous indifference for the rights of the Plaintiff in his pursuit of reasonable accommodations under the Americans with Disabilities Act of 1990 and §504 of the Rehabilitation Act of 1973.

<u>COUNT TWO—VIOLATION OF SECTION 504, REHABILITATION ACT OF 1973 AND IMPLEMENTING REGULATIONS</u>

35. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-34 above.

36. The Defendant's are a entities of a program or activity receiving federal financial assistance from the United State government and are therefore subject to the provisions of §504 of the Rehabilitation Act of 1973. 29 U.S.C. §794(a).

37. The Defendant's have violated §504 of the Rehabilitation Act by refusing to grant Plaintiff interim accommodations when requested and failing to grant such accommodations upon his request for his diagnosed disability while attending the University of Idaho is a violation of his civil rights under the act.

38. Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the Plaintiff.

## COUNT THREE—INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND ITS IMPLEMENTING REGULATIONS

39. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-38 above.

40. The Defendants have engaged in interference in the exercise or enjoyment of rights granted the victims by 42 U.S.C. §§12132 and 12203, as well as 29 U.S.C. §701.

41. Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the Plaintiff.

## COUNT FOUR—NEGLIGENCE

42. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-41 above.

43. The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff.

44. It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff.

45. The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff, by failing to

adequately train and supervise its agents and employees with regards to the requirements of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and its implementing regulations provided at 45 C.F.R. §84.44 et seq. as well as with regard to the requirements of §504 of the Rehabilitation Act and its implementing regulations.

## DAMAGES

46. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-45 above.

47. As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

48. The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §12203, and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

49. The Plaintiff has suffered actual damages as a result of his out-of-pocket expenses, embarrassment, humiliation, deprivation of his civil rights, injury to reputation, pain and suffering, inconvenience, emotional and physical suffering and past diversion of resources, as described above in the amount of $235,000.00, which continue to accrue.

50. In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury.

51. The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined at trial.

52. The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the ADA and its implementing regulations.

53. The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

54. The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

## PRAYER FOR RELIEF

55. WHEREFORE, the Plaintiff James Storm Shirley, prays that the Court enter judgment against the Defendants as follows:

A. That the Court find and declare that the actions of the Defendants constitute violations of the Americans with Disabilities Act and section 504 of the Rehabilitation Act of 1973;

B. That the Court award to the Plaintiff and against the Defendants actual and compensatory damages for all out-of-pocket expenses in the amount of $2,500.00, which continue to accrue;

C. That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the loss of earning potential in the amount of $90,000.00 per year, but which are continuing to accumulate yearly from July to June of each calendar year as Plaintiff continues to be unable to apply for the bar exam in Montana (which had been planned for July of 2013) and pursue his practice of Law. Such loss of earnings currently stand at approximately $82,500.00 (as of May 2014) and will continue to accrue at the rate of $7,500.00 per month hereafter;

D. That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the Plaintiff's future lost economic opportunity in the amount of $75,000.00;

E. That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration and mental anguish resulting from the Defendant's acts of coercion and intimidation that have been presented to prevent the Plaintiff's successful completion of his educational programs which have prevented completion of his Ph.D. and J.D. in the amount of $75,000.00;

F. That the Court enter an order establishing a complete reinstatement of the Plaintiff to the College of Law enabling him to complete his degree immediately, along with a restoration of Plaintiff's rights and "good standing" status which would permit his completion of both degrees reference above.

G. That Plaintiff be permitted to complete the J.D. portion of his legal studies as a visiting student at the University of Montana College of Law or other institution that will permit such enrollment, including a possible "semester in practice" or videoconference based instruction if available as Plaintiff is no longer residing in Moscow, ID. and does not wish to return as a result of his treatment and abuse while attending the University of Idaho.

H. That the court order Defendant College of Law to accept previous coursework from the University of Montana College of Law from the summer of 2011 and that such grades be computed into his existing GPA.

I. That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined at trial;

J. That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the ADA and its implementing regulations;

K. That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in the administrative remedy portion of this action to one Ken Nagy;

L. That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

M. That the Court order any further and additional relief as the interests of justice may require including but not limited to requiring the University of Idaho to completely revise and restructure their existing Counseling and Testing Center procedures and methods so as to prevent any such similar trauma from occurring in a similar manner to future disabled students.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this 29th day of May, 2014.

_____
JAMES STORM SHIRLEY
Plaintiff

JAMES STORM SHIRLEY, being first duly sworn on her oath, deposes and says:

I am the Plaintiff herein, that I have prepared the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

_____
JAMES STORM SHIRLEY

STATE OF I D A H O    )
                      : ss
County of  LATAH      )

I, _____CHRISTIAN SANTIAGO_____, a Notary Public for said state, does hereby certify that on the __29__ day of _____MAY_____, 2014, personally appeared before me JAMES STORM SHIRLEY, who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

SEAL

[Notary Seal: CHRISTIAN SANTIAGO, NOTARY PUBLIC, STATE OF IDAHO]

_____
Notary Public in and for the State of __IDAHO__
Residing at: __MOSCOW, IDAHO__
My commission expires: __AUG 16, 2019__